United States District Court
Southern District of Texas
**ENTERED**
May 04, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BYRON RAY BARKER,<br>TDCJ #2182745, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-21-3001 |
| BOBBY LUMPKIN, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Byron Ray Barker has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), challenging a conviction from Harris County, Texas, for continuous sexual abuse of a child. Director Bobby Lumpkin has filed Respondent Lumpkin's Answer with Brief in Support ("Respondent's Answer") (Docket Entry No. 14), arguing that Barker is not entitled to relief under the legal standard found in 28 U.S.C. § 2254(d). Barker has filed a Reply to Respondent's Answer ("Petitioner's Reply") (Docket Entry No. 18). After considering all of the pleadings, the state court record, and the applicable law, the court will dismiss this action for the reasons explained below.

## I.  Background

A jury in the 208th District Court of Harris County, Texas, found Barker guilty of engaging in continuous sexual abuse of a child in Cause No. 1463841 and sentenced him to 70 years' imprisonment.[1]  On direct appeal Barker argued that the trial court erred by admitting evidence of extraneous offenses involving another child during the guilt/innocence phase of the proceeding and that his conviction was not supported by legally sufficient proof.[2]  An intermediate court of appeals rejected those arguments and affirmed the conviction in an unpublished opinion after setting forth the following facts based on the evidence presented at trial:

> [G.A.], the complainant in this case, lived with appellant, who is her step-father, her mother, and her siblings: [T.B.], [L.B.], and [H.B.].[]  [T.B.] and [L.B.] are [G.A.]'s step-siblings, i.e., appellant is their father, and [H.B.] is [G.A.]'s half-sister, i.e., appellant and [G.A.]'s mother are [H.B.]'s parents.
>
> The three girls — [L.B.], [G.A.], and [H.B.] — slept together in a bedroom across the hall from appellant and [G.A.]'s mother.  [T.B.] slept on an air mattress in the hall.
>
> [G.A.] testified that, beginning when she was in first grade, appellant would come into the bedroom in the early morning hours and rub her legs, stomach area, hips, and along her panty line. He soon progressed to rubbing her vagina with his hand while groaning.  Later, he began

---

[1]See Verdict (Guilt/Innocence), Docket Entry No. 15-1, p. 296; Verdict (Punishment), Docket Entry No. 15-1, p. 304; Judgment of Conviction by Jury, Docket Entry No. 15-1, p. 311.  For purposes of identification all page numbers refer to the pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Appellant's Brief, Docket Entry No. 15-19, pp. 6, 14-31.

inserting his finger in her vagina, rubbing his penis on her vagina, and eventually penetrating her vagina with his penis.

The last sexual assault occurred in the early morning hours of February 15, 2015, when [G.A.] was in the fourth grade.  On this occasion, appellant penetrated [G.A.]'s vagina with his fingers.  During the assault, [G.A.] heard the bedroom door open.  The next morning, [G.A.]'s mother asked her if "anything happened last night," and [G.A.] disclosed the assaults to her mother after [T.B.] had told [G.A.] to tell because it was going to be okay. Until then, [G.A.], [L.B.], and [H.B.] had a "pact" not to disclose the [assaults] because they were afraid to tell anyone for fear of hurting the rest of the family.

[T.B.] testified that on about five occasions he saw appellant go into the girls' room at night. He testified that he awoke on those occasions because appellant would either step on or bump the air mattress he was sleeping on in the hall.   [T.B.] testified that he could see appellant go to [G.A.]'s bed and rub her back and "places I couldn't see."

[L.B.] testified that she saw appellant stand on her bed to reach [G.A.], who was on the bunk above.  She saw appellant "play" with [G.A.], but she could not see what appellant was actually doing.

Over objection, [L.B.] was permitted to testify that appellant also abused her "many" times.  As an example, [L.B.] told of appellant touching her vagina while they were sitting on the couch under a blanket and watching a movie.

In contrast, [H.B.], the youngest girl, testified that she did not think she ever saw appellant in their room at night, and she did not think that she ever saw him do anything inappropriate to [G.A.].  [H.B.] was upset with [G.A.] for testifying against appellant.

<u>Barker v. State</u>, No. 01-18-00174-CR, 2019 WL 2220111, at *1 (Tex. App. — Houston [1st Dist.] May 23, 2019, pet. ref'd) (footnote omitted),[3] <u>cert. denied, Barker v. Texas,</u> 140 S. Ct. 2686 (2020).

Barker now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254, arguing that he is entitled to relief from his conviction for the following reasons:

1.  He was denied effective assistance of counsel during his appeal when his attorney failed to raise the following issues:

    (a)  the trial court improperly admitted medical records found in State's Exhibits 2 and 3, which contained hearsay;

    (b)  ineffective assistance by trial counsel for failing to raise an adequate objection to State's Exhibits 2 and 3; and

    (c)  prosecutorial misconduct for the use of "perjured" testimony by G.A. and L.B.

2.  He was denied effective assistance of counsel during trial when his defense counsel failed to:

    (a)  prepare for trial by conducting an independent investigation, researching the relevant law, or developing a trial strategy that blamed another party as the perpetrator;

    (b)  impeach the complaining witness and her sister with prior inconsistent statements;

---

[3]The court of appeals referred to the minor children who testified against Barker by using Tom, Mary, Jane, and Doe as aliases.  <u>See Barker,</u> 2019 WL 2220111 at *1 n.1.  Consistent with privacy rules found in the Federal Rules of Civil Procedure, and to avoid confusion when referring to the trial testimony, the court will refer to the minor children using their initials.  <u>See</u> Fed. R. Civ. P. 5.2(a)(3) (stating that filings may include only a minor's initials).

-4-

    (c)   call favorable witnesses Virginia Barker and Detective Silva;

    (d)   object to the admission of the complaining witness's statement;

    (e)   object to the admission of irrelevant evidence about jail phone calls; and

    (f)   preserve error by requesting a mistrial based on prosecutorial misconduct for eliciting hearsay.[4]

The record reflects that these claims were among those raised previously by Barker in a state court Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under [Texas] Code of Criminal Procedure, Article 11.07 ("State Habeas Application").[5]   The Texas Court of Criminal Appeals summarily denied relief without a written order.[6]   The respondent argues that Barker's Petition should be dismissed because he is not entitled to relief under the legal standard that applies on federal habeas corpus review.[7]

## II.   Standard of Review

---

[4]Petition, Docket Entry No. 1, pp. 6-14.   Because Barker represents himself, his pleadings are subject to a less stringent standard than those drafted by lawyers.   See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).

[5]State Habeas Application, Docket Entry No. 15-21, pp. 9-19.

[6]Action Taken on Writ No. WR-92,821-01, Docket Entry No. 15-20.

[7]Respondent's Answer, Docket Entry No. 14, pp. 11-25.

When the Texas Court of Criminal Appeals has denied a state habeas application without a written order that decision qualifies as an adjudication on the merits, which is subject to deference under the federal habeas corpus standard of review established by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), 28 U.S.C. § 2254(d). See Anaya v. Lumpkin, 976 F.3d 545, 550 (5th Cir. 2020); see also Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000) ("Under Texas law a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of the claim."). For claims adjudicated on the merits a federal habeas corpus court may not grant relief unless the state court's conclusion "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted).

-6-

To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The record that accompanies Barker's State Habeas Application reflects that the state did not file an answer, and there are no affidavits from Barker's attorneys or findings of fact and conclusions of law by the trial court.[8]   Nevertheless, the deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or explain its decision. See Early v. Packer, 123 S. Ct. 362, 365 (2002) (per curiam); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial."); Richter, 131 S. Ct. at 785 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been

---

[8]See State Habeas Corpus Record, Writ No. 92,821-01, Docket Entry No. 15-21.

'adjudicated on the merits.'"). Because a federal habeas corpus court only considers the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when the state court denies relief without a written opinion. <u>See Schaetzle v. Cockrell,</u> 343 F.3d 440, 443 (5th Cir. 2003). In such circumstances, a federal habeas corpus court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." <u>Id.</u> (quoting 28 U.S.C. § 2254(d)(1)-(2)).[9]

### III.  Discussion

### A.  Claims of Ineffective Assistance of Counsel

Barker contends that he is entitled to relief from his conviction because he was denied effective assistance of counsel during his trial and direct appeal.[10] Claims for ineffective assistance of counsel are governed by the clearly established standard announced in <u>Strickland v. Washington,</u> 104 S. Ct. 2052 (1984). To prevail under the <u>Strickland</u> standard a criminal defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in

---

[9]Even if the court were to apply the pre-AEDPA standard of <u>de novo</u> review, Barker does not demonstrate that his conviction was tainted by a constitutional violation or that he is entitled to prevail. <u>See</u> 28 U.S.C. § 2241(c)(3).

[10]Petition, Docket Entry No. 1, pp. 6-14.

prejudice.  Id. at 2064.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Id.

To satisfy the deficient-performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Strickland, 104 S. Ct. at 2064.  This is a "highly deferential" inquiry that requires "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 2065.  "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that Strickland's first prong is satisfied."  Buck v. Davis, 137 S. Ct. 759, 775 (2017) (internal quotation marks and citation omitted).

To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 104 S. Ct. at 2068.  A defendant must "affirmatively prove prejudice."  Id. at 2067.  A habeas petitioner cannot satisfy the second prong of Strickland with mere speculation and conjecture.  See Bradford v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice.  See Day v. Quarterman, 566 F.3d 527, 540-41 (5th Cir. 2009).

-9-

Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Id. at 1413; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014) (same). Barker does not show that his trial or appellate counsel was ineffective under this deferential standard for reasons discussed below.

## B.   Ineffective Assistance of Appellate Counsel

Barker contends that he is entitled to relief from his conviction for continuous sexual abuse of a child because his appellate counsel failed to raise three issues during his direct appeal.[11]  To establish that counsel's performance was deficient in the context of an appeal, the petitioner must show that his

_____

[11]Petition, Docket Entry No. 1, pp. 6-9.

attorney was objectively unreasonable "in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." Smith v. Robbins, 120 S. Ct. 746, 764 (2000). If the petitioner succeeds in such a showing, he must then establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Id.

### 1.   Failure to Challenge Admissibility of Medical Records

Barker claims that his appellate counsel was ineffective for failing to raise a challenge to the trial court's decision to admit portions of State's Exhibits 2 and 3, which contain medical records of G.A. and L.B. from examinations conducted by a nurse at Texas Children's Hospital.[12]   Barker alleges that appellate counsel was ineffective for failing to argue that the medical records contained out-of-court statements that were admitted improperly under Rule 803(6) of the Texas Rules of Evidence, which contains an exception to the prohibition against hearsay for records of regularly conducted activities.[13] He also appears to allege that the records were admitted in violation of the Sixth Amendment Confrontation

---

[12]Id. at 6-7.

[13]Id. at 7.

-11-

Clause because the records contained comments made by his wife, Virginia Barker, who did not testify.[14]

Barker does not provide page numbers or citations to the record for the specific comments he finds objectionable. He appears to object to statements made by Virginia Barker when she brought G.A. to Texas Children's Hospital, where G.A. identified her step-father (Barker) as the person who had been sexually abusing her for a long time.[15]

Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). Statements that qualify as hearsay are inadmissible unless an exception applies. See Tex. R. Evid. 802. Under Rule 803(6), [a] record of "an act, event, condition, opinion, or diagnosis" is admissible under an exception to the hearsay rule for business records if the following criteria are met:

    (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

_____

[14]Id. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. amend VI.

[15]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 78-88 (reviewing objections and agreed redactions to medical records containing comments attributed to Virginia Barker about G.A.).

(B)  the record was kept in the course of a regularly conducted business activity;

(C)  making the record was a regular practice of that activity;

(D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

(E)  the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

Tex. R. Evid. 803(6). Barker argues that the medical records containing statements made by G.A. to Virginia Barker were admitted improperly under Rule 803(6) because the state failed to demonstrate that those records were made by someone with the requisite personal knowledge.[16]  Barker argues further that the state failed to give adequate notice by serving the records with an affidavit for purposes of authentication in compliance with Rule 902(10)(A).[17]

---

[16] Id.

[17] Petition, Docket Entry No. 1, pp. 7-8. To comply with Rule 902(10), the proponent must serve the records on the opposing party with a business records affidavit for authentication fourteen days before trial. See Tex. R. Evid. 902(10)(A). Where medical records are introduced through the testimony of a "live" witness, there is no need for the proponent to give notice under Rule 902(10)(A). Harris v. State, 799 S.W.2d 348, 351 (Tex. App. — Houston [14th Dist.] 1990, no pet.) (citing Lee v. State, 779 S.W.2d 913, 917–18 (Tex. App. — Houston [1st Dist.] 1989, pet. ref'd)).

Barker does not show that the exception for business records found in Rule 803(6) or the authentication requirement found in Rule 902(10)(A) are applicable because the prosecutor moved to admit State's Exhibits 2 and 3 under a different exception to the hearsay rule reserved for statements made for purposes of medical diagnosis and treatment.   See Tex. R. Evid. 803(4) (allowing statements made for or reasonably pertinent to medical diagnosis and treatment from the rule against hearsay).   The record shows that the prosecutor presented State's Exhibits 2 and 3 during testimony from Rachel Fletcher, who was a registered nurse with Texas Children's Hospital.[18]   Fletcher testified that she was a certified pediatric emergency nurse, a certified trauma nurse, and a certified sexual assault nurse examiner ("SANE"), who evaluates patients who present themselves to the emergency room following a sexual assault.[19]   During Fletcher's testimony the state sought to admit medical records of her examination of G.A. and L.B. in State's Exhibits 2 and 3.[20]   Portions of those records were redacted.[21]   Barker's trial counsel raised an objection to the medical records, which contained statements made by the girls to Virginia Barker as an outcry witness and identified Barker as the

---

[18]Reporter's Record, vol. 3, Docket Entry No. 15-4, p. 46.

[19]Id. at 47-50.

[20]Id. at 51-52.

[21]Id. at 52 lines 5-6.

-14-

perpetrator, based on hearsay.[22]   The prosecutor argued that the records were admissible under an exception to the prohibition against hearsay for statements made for purposes of medical diagnosis and treatment.[23]

Defense counsel objected to the admission of the records, citing Taylor v. State, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008), in which the Texas Court of Criminal Appeals said:  "We think it is appropriate, therefore, to require that the proponent of the hearsay exception make the record reflect that it was important to the efficacy of the treatment that the mental-health professional know the identity of the perpetrator."[24]   The trial court initially sustained defense counsel's objection.[25]   Thereafter, the prosecutor clarified through additional questioning that Nurse Fletcher made the records for purposes of medical diagnosis and treatment to determine if the patient suffered trauma during the assault or was exposed to infection, which may need antibiotics.[26]   Nurse Fletcher observed that statements about the child's history may also be the only information available for making a medical diagnosis of sexual

---

[22]Id. at 53-54.

[23]Id. at 53 lines 19-22.

[24]Id. at 54.

[25]Id.

[26]Id. at 55-56.

-15-

abuse.[27]   Nurse Fletcher further agreed that the statements were important for purposes of making a diagnosis and forming a treatment plan.[28]

When the state moved to admit the records again based on Nurse Fletcher's testimony, defense counsel objected on the grounds that the records were not created for purposes of medical diagnosis, but for making a case against the defendant.[29]   The state noted that the records were created on February 15, 2015, shortly after G.A. was sexually abused for the last time by Barker.[30]   The trial court overruled defense counsel's objection and admitted the records, subject to redaction before showing them to the jury.[31]   The trial court allowed defense counsel to lodge a running objection to the records.[32]   The trial court overruled counsel's objection to the extent that the statements related to medical diagnosis and treatment.[33]   When defense counsel asked that none of the records be published to the jury before each one was reviewed and redacted,

---

[27]Id. at 56 lines 1-3.

[28]Id. lines 8-10.

[29]Id. at 57 lines 21-24.

[30]Id. at 59 lines 4-6.

[31]Id. at 62 lines 15-17 and 23-25 through 63 lines 1-4.

[32]Id. at 67 line 25 through 68 lines 1-2 and 9-10.

[33]Id. at 77 lines 4-7.

the trial court took a break in the proceedings and directed the attorneys for both sides to review them over the lunch hour.[34]

After counsel for both sides reviewed the records and agreed to several redactions, Barker's defense attorney raised additional objections, arguing that the Supreme Court's decision in Crawford v. Washington, 124 S. Ct. 1354 (2004), and the Confrontation Clause trumped the evidentiary rule that created an exception to hearsay for statements related to medical diagnosis and treatment.[35] The trial court asked defense counsel if he had a case supporting his objection under the Confrontation Clause.[36] Defense counsel replied that he did not.[37] The trial court overruled defense counsel's objection to the record containing the victim's outcry statement identifying Barker as the perpetrator, which Virginia Barker related to Fletcher during G.A.'s medical examination.[38]

---

[34]Id. at 77-78.   Barker argues that waiting until trial to review and redact the records is proof that his defense counsel was unprepared.   See Petition, Docket Entry No. 1, p. 10.   Last-minute preparation of exhibits or other issues that may cause counsel to work late at night or over a lunch break are not unusual during a trial and are not, standing alone, evidence of an attorney's failure to prepare.

[35]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 78-81.

[36]Id. at 81.

[37]Id.

[38]Id. at 79-80, 81 lines 19-22.   Barker's defense counsel made similar hearsay objections when the prosecutor proposed admitting records of L.B.'s medical examination in State's Exhibit No. 3, which were admitted during testimony from L.B.'s mother, Rachel
(continued...)

-17-

In Crawford the Supreme Court held that the Confrontation Clause does not allow admission of "testimonial statements" from a witness who does not testify at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. Crawford, 124 S. Ct. at 1369. An out-of-court statement is "testimonial" if it was "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" United States v. Santos, 589 F.3d 759, 762 (5th Cir. 2009) (quoting Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2532 (2009)). The circumstances must objectively indicate that the "primary purpose" of the testimonial statement is "to establish or prove past events potentially relevant to later criminal prosecution." Davis v. Washington, 126 S. Ct. 2266, 2274 (2006); see also Michigan v. Bryant, 131 S. Ct. 1143, 1155 (2011) (if the "primary purpose" of the statement is not to create an out-of-court substitute for trial testimony, then "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause"). Medical records created for purposes of medical diagnosis and treatment are not testimonial. See Melendez-Diaz, 129 S. Ct. at 2533 n.2; Santos, 589 F.3d at 763; Holiday v. Stephens, 587 F. App'x 767, 777-78 (5th Cir. 2014). A statement

---

[38](...continued)
Clayton. See Reporter's Record, vol. 4, Docket Entry No. 15-5, pp. 114-17.

that is not testimonial cannot violate the Confrontation Clause. See Brown v. Epps, 686 F.3d 281, 286 (5th Cir. 2012).

Nurse Fletcher testified that the statements made by Virginia Barker when she arrived at the hospital with G.A. were important for determining whether the child had been exposed to infection or suffered trauma and needed medical treatment.[39] Barker points to a brief filed by his defense counsel before trial, but he does not show how this authority establishes that the trial court's evidentiary ruling was erroneous.[40] As noted above, records related to medical treatment and diagnosis are not considered testimonial and are not inadmissible under the Confrontation Clause or Crawford. See Brown, 686 F.3d at 286. Even if the records were admitted in error, any error would have been harmless because Barker has not shown that the statements injected facts that were not introduced during testimony from other witnesses. See Holiday, 587 F. App'x at 779. Because Barker does not establish that his appellate attorney was deficient for failing to raise this issue, he does not demonstrate that the state court's decision to reject this claim was unreasonable. Therefore, Barker is not entitled to relief on this claim.

_____

[39]Reporter's Record, vol. 3, Docket Entry No. 15-4, p. 55 lines 20-25 through p. 56 lines 1-3.

[40]See Petition, Docket Entry No. 1, p. 10 (referencing Byron Barker's Motion to Admit Evidence of Prior Accusations, Brief in Support, and Response to State's Motion in Limine, which is located in the Clerk's Record, Docket Entry No. 15-1, pp. 261-76).

## 2. Failure to Raise Ineffectiveness of Trial Counsel

Barker argues that his trial counsel was ineffective for failing to raise a meritorious objection in connection with the medical records found in State's Exhibits 2 and 3.[41] Arguing that it was "absolutely clear" on the record that his defense counsel was unprepared for trial, Barker contends that his appellate attorney was deficient for failing to raise an ineffective-assistance claim during his appeal.[42]

A direct appeal is generally inadequate to review claims of ineffective assistance of trial counsel because "'the inherent nature of most ineffective assistance' of trial counsel 'claims' means that the trial court record will often fail to 'contai[n] the information necessary to substantiate' the claim." Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (quoting Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)). The available trial record shows that Barker's defense counsel was familiar with the medical records and raised several objections to portions that the state did not agree to redact.[43] Barker does not show that his defense counsel failed to raise a meritorious objection concerning the admissibility of State's Exhibits 2 and 3 or that he was unprepared for trial. For reasons discussed further below, Barker

---

[41]Petition, Docket Entry No. 1, p. 7.

[42]Id.

[43]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 81-87.

-20-

does not establish that his trial attorney was deficient for any other reason. Absent a showing that trial counsel was ineffective, Barker does not show that his appellate attorney was deficient for failing to raise this argument or that the state court's decision to deny this claim was unreasonable. Accordingly, Barker is not entitled to relief on this issue.

### 3.   Failure to Raise Prosecutorial Misconduct

Barker contends that the prosecutor engaged in misconduct by allowing G.A. and L.B. to commit "perjury" without clarifying or correcting their testimony for the jury.[44]   Barker contends, therefore, that his appellate counsel was deficient for failing to raise the issue of prosecutorial misconduct on appeal.[45]

The Supreme Court has held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction[.]" Napue v. People of the State of Illinois, 79 S. Ct. 1173, 1177 (1959). The prosecution denies a criminal defendant due process when it knowingly presents false testimony at trial or allows untrue testimony to go uncorrected.   See Giglio v. United States, 92 S. Ct. 763, 766 (1972); see also Moody v. Johnson, 139 F.3d 477, 484 (5th Cir. 1998) ("It is well settled that the State is not permitted to present false evidence or allow the presentation of false evidence to go uncorrected.") (citations

---

[44]Petition, Docket Entry No. 1, p. 8.

[45]Id.

-21-

omitted).   To demonstrate a constitutional violation in this context a defendant must show that "(1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997) (citing Giglio, 92 S. Ct. at 765-66) (citation omitted). This requires a defendant to show that the state introduced "specific misleading evidence important to the prosecution's case in chief." Donnelly v. DeChristoforo, 94 S. Ct. 1868, 1873 (1974).

Barker lists three instances of testimony by L.B. and G.A., which he claims was false, but not corrected by the prosecutor during his trial:

1.   L.B. commented in the medical records found in State's Exhibit 3 that Barker only sexually abused her "once," but she testified at trial that he abused her "many times," citing 4RR152.

2.   G.A. testified that she did not tell anyone what happened because she "[didn't] want to hurt [her] mom; and [she] [didn't] want to hurt [her] family," citing 5RR42, but told a detective and the forensic interviewer that Barker told her not to tell anyone because he would "go to jail for a long time" and she "felt sorry for him because he buys us things," citing CR 10.

3.   G.A. testified that after abusing her on February 15, 2015, Barker "sat on [her] bed for a little bit" and did not leave right away, citing 5RR37-38, but she told the forensic interviewer that he pretended to turn off the television and hug her when her mom walked into the bedroom.[46]

_____

[46]Petition Docket Entry No. 1, p. 8.   Barker references one other false statement by G.A., about whether Barker ever took photographs of her, citing CR 10 and CR 200-203, but this testimony was not presented at trial.   Petition, Docket Entry No. 1, pp. 8-9.

The record does not support Barker's claim that there was false testimony or that the prosecutor knowingly suborned perjury.

In support of his claim that L.B. committed perjury Barker points to a medical record showing that she told a staff member who conducted the initial screening for sexual abuse at Texas Children's Hospital that "dad had been touching her privates."[47] L.B., who was seven years of age at the time, told the staff member that it happened "once."[48] During her examination by Nurse Fletcher, however, L.B. stated that she had been sexually abused "[m]ore than once."[49] She also told the detective who prepared the probable cause affidavit in support of the criminal complaint that Barker had touched her "more than once" while they were watching television from the time she was in the first grade until the time she was in second grade.[50] At trial, when L.B. was ten years of age, she testified that Baker touched her in a way that made her feel uncomfortable "many" times and described one particular

---

[47]See continuation of Memorandum in Support of Habeas Application, attachment 2 to Petitioner's Reply, Docket Entry No. 18-2, p. 45 (record from Texas Children's Hospital).

[48]Id.

[49]Reporter's Record, vol. 9 — Exhibits, State's Exhibit 3 (part one), Texas Children's Hospital Sexual Assault Examination Forensic Report Form, Docket Entry No. 15-14, p. 67.

[50]See Complaint, Docket Entry No. 15-1, pp. 10-11.

-23-

instance of sexual abuse by Barker while they were watching television.[51]

In support of his claim that G.A. committed perjury at trial, Barker points to statements that were included in the affidavit of probable cause in support of the criminal complaint,[52] and a summary of her statements to a forensic interviewer that were provided to the defense by the prosecutor before trial.[53] G.A. was nine years old when she spoke to the detective who prepared the probable cause affidavit.[54] At trial, when G.A. was twelve, she described enduring years of inappropriate touching by Barker until she finally told her mother on February 15, 2015.[55] She briefly described the last instance of sexual abuse by Barker, which occurred the previous day, and then told the jury that she "was scared to tell anybody because [she] didn't want to hurt the rest of [her] family."[56] G.A. did not testify about her mom entering the room or mention that Barker pretended to hug her when the last instance of sexual abuse

---

[51]Reporter's Record, vol. 4, Docket Entry No. 15-5, pp. 141, 152, 154-60.

[52]See Complaint, Docket Entry No. 15-1, p. 10.

[53]See Notice of Intention to Use Child Abuse Victim's Hearsay Statement Supplemental, Docket Entry No. 15-1, pp. 200-02.

[54]See Complaint, Docket Entry No. 15-1, p. 10.

[55]Reporter's Record, vol. 5, Docket Entry No. 15-6, pp. 8, 37-38.

[56]Id. at 37-39.

-24-

occurred, which were details included in her statement to the forensic interviewer.[57]

The record shows that there were only minor differences between the statements made by L.B. and G.A. when reporting the abuse and the testimony given years later at trial. Both girls were asked when testifying about whether they knew the difference between the truth and a lie.[58] To the extent that the girls gave testimony that was inconsistent with a previous statement, the differences that Barker highlights are insufficient to establish perjury. See Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) ("Conflicting or inconsistent testimony is insufficient to establish perjury.") (citing Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990)). Contradictory trial testimony merely establishes a credibility question for the jury. Koch, 907 F.2d at 531 (citing Little v. Butler, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured)).

Because Barker does not demonstrate that L.B. or G.A. testified falsely, he fails to show that the prosecutor committed misconduct by failing to correct their testimony at trial. He

---

[57]See Notice of Intention to Use Child Abuse Victim's Hearsay Statement Supplemental, Docket Entry No. 15-1, p. 201.

[58]Reporter's Record, vol. 4, Docket Entry No. 15-5, pp. 89-90; Reporter's Record, vol. 5, Docket Entry No. 15-6, pp. 8-9.

further fails to show that his appellate attorney was deficient for failing to raise a claim of prosecutorial misconduct. Accordingly, Barker has not shown that he was denied effective assistance of counsel on appeal or that the state court's decision to deny relief was unreasonable. Therefore, he is not entitled to relief on this claim.

## C.   Ineffective Assistance of Trial Counsel

Barker contends that he is entitled to relief from his conviction because he was denied effective assistance of counsel at his trial.[59] He raises several allegations of ineffectiveness.[60] Each allegation of deficient performance is examined separately below under the deferential legal standard for ineffective-assistance claims outlined above, which requires the court to presume that counsel's conduct was reasonable and requires a defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 104 S. Ct. at 2065 (internal quotation marks and citation omitted).

### 1.   Failure to Prepare - Part One

Barker contends that his trial attorney failed to prepare for trial because he relied solely on the investigator who was

---

[59]Petition, Docket Entry No. 1, pp. 6, 10-14.

[60]Id.

-26-

appointed to assist him and did not conduct an independent investigation.[61]   Barker appears to claim that his counsel considered calling an expert psychologist to rebut testimony from the state's expert, but failed to secure the funds.[62]

A habeas corpus petitioner who alleges a failure to investigate by his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. See Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005) (citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)). Barker has not provided an expert report or alleged with specificity what an investigation would have revealed, and he does not otherwise show that the outcome of the case would have been altered if counsel had retained a defense expert. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994). Accordingly, this allegation does not state a claim upon which relief may be granted. See Lincecum v. Collins, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).

### 2. Failure to Prepare - Part Two

---

[61]Petition, Docket Entry No. 1, p. 6.

[62]Id. at 10. Barker's claim that counsel failed to prepare for trial by calling other favorable witnesses is addressed separately below. See id. at 10-12.

Barker also contends that counsel also failed to prepare for trial by researching the Sixth Amendment Confrontation Clause, which resulted in the wrongful admission of medical records found in State's Exhibits 2 and 3.[63]   Barker appears to allege that trial counsel was ineffective for failing to prepare because he did not raise an adequate objection to medical records found in State's Exhibits 2 and 3 under Crawford v. Washington, 124 S. Ct. 1354 (2004).

As discussed above, Barker has not shown that the medical records found in State's Exhibits 2 and 3 were admitted improperly under the exception to hearsay for statements made for the purpose of medical diagnosis and treatment.  See Tex. R. Evid. 803(4); see also Brown, 686 F.3d at 286 (noting that records related to medical treatment and diagnosis are not testimonial and are not inadmissible under the Confrontation Clause or Crawford).   The record further reflects that Barker's defense counsel raised repeated objections to the medical records, several of which were sustained, and that he successfully limited the records that were admitted.[64]   Barker does not demonstrate that his counsel failed to prepare for trial by researching the relevant law or that he failed to make any other objection that would have been sustained. Under these circumstances, Barker does not show that his defense counsel was deficient or that the state court's decision to deny

---

[63]Petition, Docket Entry No. 1, p. 10.

[64]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 52-54, 56-63, 65, 66, 67-68, 71-72, 73-87; Reporter's Record, vol. 5, Docket Entry No. 15-6, p. 187.

relief on this claim was unreasonable. Accordingly, he is not entitled to federal habeas relief on this issue.

### 3.  Failure to Prepare - Part Three

Barker alleges further that his counsel failed to prepare for trial by presenting a defense that blamed another perpetrator.[65] In particular, Barker contends that his counsel was deficient for failing to argue that his father, Larry Barker, was to blame for "these terrible acts."[66]

Court records show that Barker's father was also convicted of continuous sexual abuse of a child involving G.A. and L.B. See Barker v. State, No. 01-19-01009-CR, 2021 WL 4733789 (Tex. App. — Houston [1st Dist.] Oct. 12, 2021, pet. ref'd). Barker concedes that mention of his father and the criminal charges that were pending against him at the time of Barker's trial was excluded pursuant to the State's Motion in Limine, which argued that mention of Larry Barker or acts performed by him were inadmissible under the "rape shield" provision found in Rule 412 of the Texas Rules of Evidence.[67] Barker appears to fault his counsel for agreeing to

---

[65]Petition, Docket Entry No. 1, p. 10.

[66]Id.

[67]Id.; see State's Motion in Limine, Docket Entry No. 15-1, pp. 235-36; see also Reporter's Record, vol. 3, Docket Entry No. 15-4, p. 6 (observing that "both sides are agreeing in total to the Motions in Limine" filed by the state and the defense).

exclude any mention of Larry Barker during the trial.[68]  However, Barker does not show that this evidence would have been admissible. His conclusory allegations are insufficient to state a claim.  <u>See</u> <u>Koch v. Puckett</u>, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).  He does not otherwise show that the state court's decision to deny relief was unreasonable.

### 4.   Failure to Impeach Witnesses

Barker contends that his trial counsel was ineffective for failing to impeach G.A. and L.B. with prior inconsistent statements that the girls made to the forensic interviewer or nurse who conducted the sexual assault examination.[69]  He references the same statements that are listed above in connection with his claim that the prosecutor engaged in misconduct by presenting false testimony.[70]  Barker also references inconsistent statements made by G.A. about whether he had ever used his phone to take inappropriate photos of her.[71]

The record reflects that defense counsel cross-examined each child after her testimony and focused instead on the passage of

---

[68]Petition, Docket Entry No. 1, p. 10.

[69]<u>Id.</u> at 10-11.

[70]<u>Id.</u> at 8-9, 10-11.

[71]<u>Id.</u> at 11.

time between the alleged abuse and the time of trial, their inability to remember specific details, and the number of people they talked to about their story who may have influenced their testimony or contaminated their memories.[72]    During his closing statement to the jury, defense counsel noted that there was no physical evidence of abuse and argued that the testimony from both L.B. and G.A. was the product of "false memory."[73]    Counsel's decision to pursue a defense based on the possibility that the girls concocted their stories based on false memories or were manipulated by others to accuse Barker of abuse is a matter of trial strategy that is entitled to substantial deference.    See Strickland, 104 S. Ct. at 2065.    "[A] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."    Pape v. Thaler, 645 F.3d 281, 291 (5th Cir. 2011) (citation and internal quotation marks omitted).

The Fifth Circuit has recognized that defense counsel is not deficient for failing to impeach a child sexual-assault victim with previous statements made during the course of an investigation

---

[72]Reporter's Record, vol. 4, Docket Entry No. 15-5, pp. 100-04, 126, 167-75; Reporter's Record, vol. 5, Docket Entry No. 15-6, pp. 51-68.

[73]Reporter's Record, vol. 6, Docket Entry No. 15-7, pp. 21-22, 24-25.

because doing so may do more harm than good.  See Reed v. Vannoy, 703 F. App'x 264, 270 (5th Cir. July 28, 2017) (per curiam) (noting that forcing the jury "'to sit through yet another recitation of the traumatic abuse . . ., only this time as recounted by the purported victims at even younger and more innocent ages which, presumably, might have made the abuse seem all the more harrowing'") (internal quotation omitted).  Barker has not overcome the presumption that his attorney's failure to impeach G.A. and L.B. with statements made when they were nine and seven years of age, respectively, was sound trial strategy.  Absent a showing that counsel's performance was deficient, Barker is not entitled to relief on this claim.

### 5.  Failure to Call Witnesses

Barker contends that his trial counsel was ineffective for failing to call G.A.'s mother, Virginia Barker, who was an "outcry" witness, and Detective Silva, who allegedly harbored a vendetta against Barker.[74]  In support Barker points to a report by the defense investigator, who noted that Virginia Barker was "torn" about the case and did not believe that Barker would do what he was being accused of doing.[75]  Barker also points to notes made by his

---

[74]Petition, Docket Entry No. 1, pp. 10-12.

[75]Id. at 11 (citing Investigation Report, Exhibit A-1 to State Habeas Application, Docket Entry No. 15-21, p. 62).

defense counsel in anticipation of cross-examining Detective Silva, who was not called as a witness by the state.[76]

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses'[] willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 601 F.3d 347, 352 (5th Cir. 2010) (citing Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007)). A petitioner who alleges ineffective assistance of counsel based on the failure to call either a "lay [or] expert witness" must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."   Day, 566 F.3d at 538 (citations omitted).

The respondent notes that defense counsel may not have wanted to call Virginia Barker or Detective Silva because their testimony may have included adverse information that would have harmed the defense.[77]  Barker does not present a statement from either Virginia Barker or Detective Silva showing the substance of their proposed testimony and indicating that they would have been willing to testify on his behalf.  Absent a showing that a particular witness

---

[76]Id. at 12 (citing Cross of Silva - Initial Interviewer, Exhibit D-1 to State Habeas Application, Docket Entry No. 15-21, pp. 85-90).

[77]Respondent's Answer, Docket Entry No. 14, pp. 19-20.

would have offered testimony favorable to the defense, Barker's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. See Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). Based on this record, Barker fails to show that his counsel was ineffective for failing to call witnesses. As a result, he is not entitled to relief on this claim.

6.   Failure to Object to the Victim's Statement

Barker contends that his trial counsel was ineffective for failing to request a pretrial hearing to object to G.A.'s statement.[78] Barker appears to contend that G.A.'s outcry statement against him should have been suppressed because she spoke to several individuals (Officer Reyes, Detective Silva, and her therapist) who used improper interview techniques or did not adhere to best practices for interviewing children.[79] Barker argues that defense counsel should have invoked Article 38.072 of the Texas Code of Criminal Procedure to exclude G.A.'s outcry statement before trial as unreliable.[80]

In support of his claim that G.A.'s outcry statement should have been suppressed prior to trial Barker points to testimony from

_____

[78]Petition, Docket Entry No. 1, p. 12.

[79]Id.

[80]Id. at 13.

-34-

Officer Reyes.[81]  Reyes was a patrol officer who was dispatched to Barker's residence after Virginia Barker called to report the sexual abuse of a child.[82]  After taking an initial statement, Officer Reyes brought Virginia Barker and the girls to the station to be interviewed by a detective.[83]  On cross-examination, Officer Reyes acknowledged that he took an initial statement from Virginia Barker in front of the children.[84]  Officer Reyes admitted that he did not separate them before taking the statement, which is the standard practice for interviewing witnesses.[85]  Officer Reyes clarified on re-direct examination that this was a brief encounter, not a detailed interview, and that Virginia Barker did not appear to be feeding information to the children.[86]  Under further cross-examination, Officer Reyes acknowledged that multiple interviews or repeated questioning of children can sometimes taint their memory.[87]

---

[81]<u>Id.</u> at 12.

[82]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 17, 20-23, 25-27.

[83]<u>Id.</u> at 29.

[84]<u>Id.</u> at 37.

[85]<u>Id.</u> at 38-40.

[86]<u>Id.</u> at 43.

[87]<u>Id.</u> at 45.

Barker also points to testimony that defense counsel elicited from the forensic interviewer.[88]  Lisa Holcomb, a forensic interviewer who was employed by the Children's Assessment Center, testified that she had specialized training in taking statements from victims by using a neutral and objective manner, without asking leading questions.[89]  Using these techniques, Holcomb interviewed G.A., who disclosed that she had been sexually abused.[90] Holcomb agreed with defense counsel on cross-examination that it would be a "bad idea" to interview multiple children at the same time or with a parent in the room because doing so may cause a child to be "influenced" or "pressured" to say something by the parent.[91]  Under questioning from defense counsel, Holcomb then described how a child may adopt a "false memory" in order to please a parent or other caregiver, who may have told the child what to say.[92]

Barker does not demonstrate how the testimony given by Officer Reyes or Lisa Holcomb relates to an objection under Article 38.072, which governs the admissibility of a child's hearsay statement

---

[88]Petition, Docket Entry No. 1, p. 13.

[89]Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 126-27, 134.

[90]Id. at 140-41.

[91]Id. at 150.

[92]Id. at 150-52.

-36-

through testimony from a designated outcry witness. <u>See Garcia v. State,</u> 792 S.W.2d 88, 90-91 (Tex. Crim. App. 1990); <u>see also Norris v. State,</u> 788 S.W.2d 65, 69 (Tex. App. — Dallas 1990, pet. ref'd) ("Article 38.072 allows into evidence a child's hearsay statements that describe a sexual offense committed against the child, if the testifying witness is the first adult to whom the child made a statement about the offense.") (citing Tex. Crim. Proc. Art. 38.072, § 2(a)(1), (2)). It appears that G.A.'s initial outcry statement was made to Virginia Barker, who did not testify.[93] Barker does not show that G.A.'s initial statement was inadmissible under Article 38.072 or that defense counsel was deficient for failing to request a pretrial hearing on this basis.

More importantly, Barker does not show that his counsel's cross-examination of Officer Reyes and Holcomb was deficient or that G.A.'s statement was otherwise inadmissible. As the respondent notes, the record demonstrates that defense counsel used questioning on cross-examination of both Officer Reyes and Holcomb to raise the defense of false memory.[94] During his closing statement defense counsel pointed to Officer Reyes's failure to follow proper protocol when taking the initial statement as

---

[93]The prosecutor explained that Virginia Barker was not called to testify because she was "legally unavailable" as an outcry witness. <u>See</u> Reporter's Record, vol. 5, Docket Entry No. 15-6, p. 159 lines 22-25.

[94]Respondent's Answer, Docket Entry No. 14, p. 21.

creating the potential for false memories.[95]  Barker's allegations about this issue do not demonstrate deficient performance, and he does not show that the state court's decision to deny relief on this issue was unreasonable.  Therefore, he is not entitled to relief on this claim.

7.  <u>Failure to Object to Irrelevant Evidence</u>

Barker contends that his trial counsel was ineffective for failing to object to the admission of testimony from Deputy Pete Galvan, who testified as a custodian of records regarding the system for tracking and recording phone calls with detainees at the Harris County Jail.[96]  Barker argues that the testimony was irrelevant and that his counsel was deficient for failing to object.[97]

The record confirms that Deputy Galvan testified as a custodian of records for recorded phone calls by inmates at the Harris County Jail.[98]  During Deputy Galvan's testimony the prosecutor laid an evidentiary foundation for the admission of

---

[95]Reporter's Record, vol. 6, Docket Entry No. 15-7, pp. 20, 22.

[96]Petition, Docket Entry No. 1, p. 13; <u>see</u> Reporter's Record, vol. 3, Docket Entry No. 15-4, pp. 161-66, 169 (referencing State's Exhibits 8, 9, 10 and 11-16, 19).

[97]Petition, Docket Entry No. 1, p. 13.

[98]Reporter's Record, vol. 3, Docket Entry No. 15-4, p. 162 lines 19-20.

several exhibits.[99]  Recorded phone conversations between Barker and his wife, Virginia Barker, were discussed when the prosecutor cross-examined Barker during the guilt-innocence phase of the trial.[100]  Defense counsel objected based on hearsay, noting that the state had already authenticated the recorded phone calls and laid a predicate, but the trial court overruled defense counsel's objections and admitted one of the recorded conversations.[101] Another recorded call was played outside of the jury's presence to refresh Barker's recollection about a phone conversation that he had with G.A. about the hardships of life in jail.[102]

Because recorded phone conversations were later introduced into evidence and discussed at trial, Barker does not show that Deputy Galvan's testimony as a custodian of records was irrelevant. Counsel is not ineffective for failing to make a frivolous objection.  See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . .").  Barker does not provide any other basis for an objection to Deputy Galvan's testimony.  Based on this

---

[99]Id. at 167-71 (referencing State's Exhibits 8, 9, 10-16, 19).

[100]Reporter's Record, vol. 5, Docket Entry No. 15-6, pp. 200-04.

[101]Id. at 207-09.

[102]Id. at 216 line 25 through 217 lines 1-5.

record, Barker does not show that the state court's decision to reject this claim was unreasonable. Therefore, he is not entitled to relief on this claim.

### 8.   Failure to Request a Mistrial

Barker contends that his trial counsel was ineffective for failing to preserve error for appeal by requesting a mistrial based on prosecutorial misconduct for eliciting inadmissible hearsay.[103] Barker references testimony given by L.B.'s mother, Rachel Clayton, after the prosecutor asked whether her daughter had psychological issues from the sexual abuse that she reported.[104]

The record shows that defense counsel objected to the question about L.B.'s psychological issues, arguing that the prosecutor improperly elicited testimony that was hearsay and was only relevant during the punishment phase of the trial.[105] The trial court sustained the hearsay objection and granted defense counsel's request for a limiting instruction for the jury to disregard Clayton's answer.[106] When the prosecutor asked whether Clayton was aware of L.B.'s allegation of abuse, counsel continued to object

---

[103]Petition, Docket Entry No. 1, p. 14.

[104]Id. (citing 4RR112, lines 23-25).

[105]Reporter's Record, vol. 4, Docket Entry No. 15-5, pp. 112-14.

[106]Id. at 114.

based on hearsay.[107]   After the objections were sustained, the prosecutor rephrased her questions and the trial court overruled defense counsel's hearsay objection.[108]   The prosecutor then asked Clayton about whether L.B. had gone to therapy to deal with the allegation of abuse, and Clayton replied that she had.[109]   Defense counsel's objection to that question was also sustained and the trial court again instructed the jury to disregard Clayton's answer.[110]   Soon thereafter, the prosecutor passed the witness.[111]

In Texas "[p]rosecutorial misconduct is an independent basis for objection that must be specifically urged to preserve error." Viscaino v. State, 513 S.W.3d 802, 810 (Tex. App. — El Paso 2017, no pet.) (citation omitted).   "The proper method is to (1) object on specific grounds, (2) request an instruction that the jury disregard the comment, and (3) move for a mistrial."   Id. (citations omitted); see also Joyner v. State, 548 S.W.3d 731, 735 (Tex. App. — Houston [1st Dist.] 2018, pet. ref'd).   "Prosecutorial misconduct must be serious and continuing, such that it undermines the reliability of the fact-finding process and results in a deprivation of fundamental fairness and due process of law."

---

[107]Id. at 116.

[108]Id. at 116-17.

[109]Id. at 117.

[110]Id.

[111]Id. at 118.

-41-

Viscaino, 513 S.W.3d at 810-11 (citations omitted). A prosecutor's questioning or comments will only render a trial unfair where the improper remark was "a crucial, critical, highly significant factor in the jury's determination of guilt." Whittington v. Estelle, 704 F.2d 1418, 1422 (5th Cir. 1983).

Barker does not show that the prosecutor's questions were so pronounced and persistent that it undermined the reliability of the proceedings or deprived him of due process. See Darden v. Wainwright, 106 S. Ct. 2464, 2471 (1986) (A constitutional violation occurs only where "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting Donnelly, 94 S. Ct. at 1871); see also Berger v. United States, 55 S. Ct. 629, 631, 633 (1935) (awarding a new trial where pronounced and persistent misconduct by the prosecutor had a probable cumulative effect on the jury), overruled on other grounds by Stirone v. United States, 80 S. Ct. 270 (1960).

Likewise, the Fifth Circuit has recognized that "the decision not to seek a mistrial is frequently a strategic one." Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); see also Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) ("In deciding whether to seek a mistrial, [counsel] was required to balance the harm caused by the prosecutor's improper question against the legitimate possibility that a new trial would present less propitious prospects for his

-42-

client."). Barker does not establish that his proceeding was
tainted by prosecutorial misconduct or that the trial court would
have granted a mistrial if defense counsel had requested one. He
does not otherwise show that defense counsel was deficient for
failing to request a mistrial based on the prosecutor's questions
to Rachel Clayton. More importantly, Barker fails to establish
that the state court's decision to deny relief was unreasonable.
Therefore, he is not entitled to relief on this claim.

Absent a showing that any of Barker's claims have merit, his
Petition will be denied and this action will be dismissed.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a
district court to issue or deny a certificate of appealability when
entering a final order that is adverse to the petitioner. A
certificate of appealability will not issue unless the petitioner
makes "a substantial showing of the denial of a constitutional
right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to
demonstrate "that 'reasonable jurists would find the district
court's assessment of the constitutional claims debatable or
wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting
Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the
controlling standard this requires a petitioner to show that
"jurists of reason could disagree with the [reviewing] court's
resolution of his constitutional claims or that jurists could

-43-

conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S. Ct. at 773 (internal quotation marks and citation omitted).

After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.   Conclusion and Order

The court **ORDERS** as follows:

1.   The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Byron Ray Barker (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

2.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 4th day of May, 2023.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE